**FILED**
**JUNE 2, 2026**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Domestic Violence Protection Order for | ) ) ) ) | No. 41329-2-III |
| OSCAR CURIEL on behalf of J.C.T.[†] | ) | UNPUBLISHED OPINION |

HILL, J. — Oscar Curiel filed a domestic violence protection order (DVPO) petition on behalf of himself and his son, J.C.T., against J.C.T.'s mother and Curiel's former romantic partner, Marcelina Torres. J.C.T. alleged that Torres engaged in abusive behavior over multiple years, leading up to a physical altercation on March 6, 2025. Following a hearing, the trial court granted the protection order for both Curiel and J.C.T.

---

[†] To protect the privacy interests of J.C.T, we use his initials throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

Torres appeals, arguing the trial court abused its discretion in granting the DVPO because (1) substantial evidence did not support the domestic violence finding, (2) the trial court failed to analyze the reasonableness of the physical discipline alleged in J.C.T.'s declaration, and (3) the trial court failed to articulate a basis for including Curiel in the DVPO. We reject Torres's first two arguments because substantial evidence supports the trial court's finding that Torres engaged in domestic violence. However, while statutory authority permitted the trial court to include Curiel in the protection order, the court did not articulate findings supporting its decision. We therefore remand the matter for the trial court to enter the relevant findings as to Curiel.

BACKGROUND

Oscar Curiel and Marcelina Torres are former romantic partners and share a child, J.C.T. In March 2025, Curiel filed a petition for a DVPO for himself and J.C.T. against Torres. J.C.T. was 14 years old at the time. The petition was primarily based on an incident that occurred on March 6, but also related to prior alleged instances of physical abuse or coercive control. J.C.T. provided a statement that described the March 6 incident in detail.

In his statement, J.C.T. described the incident. While he was getting ready for school, Torres began yelling at J.C.T. to leave the house and told him she did not want to see him. J.C.T. responded that he did not want to be near her anymore. He claimed he

2

felt scared and tired of his mother. In response, Torres stood in the doorway to J.C.T.'s room and refused to let him leave. Torres blocked the door for approximately 15 minutes and told him "what would happen" if he left. Clerk's Papers (CP) at 23.

J.C.T. was tired of waiting and wanted to leave for school, so he asked Torres if she would move away from the door. Torres refused to move, so J.C.T. moved closer to the door. Torres pushed J.C.T. J.C.T. pushed her back and hit his head on the wall.[1] J.C.T. was able to leave his room, but Torres proceeded to block the front door, preventing J.C.T. from leaving. J.C.T. left the home using the back door. He then tried to walk through the side gate of the property, but Torres pushed him out of the way. J.C.T. opened the side gate, but Torres slammed it shut on J.C.T.'s hand. J.C.T. decided to call his father and left with him shortly thereafter.

Curiel filed the DVPO petition the following day. In her declaration responding to the petition, Torres denied the allegations and stated that she never pushed, shoved, or physically restrained J.C.T. Torres accused Curiel of posing a risk to J.C.T. and ascribed various motives for why Curiel initiated the petition. Sergio Torres, brother of Marcelina, and Romana Torres, mother of Marcelina, filed declarations accusing Curiel of posing a threat to J.C.T.

---

[1] In his later declaration, J.C.T. claimed that he hit his head and fell down as a result of his mother pushing him. CP at 307.

3

In J.C.T.'s declaration, he described various instances of physical and verbal altercations with his mother beginning in 2021 and leading up to the March 6 incident. For example, he stated that in October 2021, Torres returned home and noticed the dog had made a mess. J.C.T. claimed Torres became angry. He stated Torres hit him with an open hand, hit him with a metal fly swatter until it broke, and dragged him into the bathroom while pulling his hair, demanding that he clean up the mess. J.C.T. closed the door, and Torres threatened to hit him again if he did not open it. J.C.T. did not tell his father because he was "scared of what [his] mom would do" if he did. CP at 303-04.

J.C.T. also described an altercation from November 2024. Torres called him condescending names, and J.C.T. told her to stop. Torres closed her fists and tried to punch J.C.T., but he grabbed her wrist to protect himself. She told J.C.T. that he was going to end up like his father and threatened to call the police. J.C.T. tried to leave, but Torres pushed him away from the door. He opened the door, and Torres tried to punch him again. J.C.T. grabbed her wrists again, and Torres spit in his face and continued calling him names. J.C.T. claims Torres took his bed and made him sleep on the floor. J.C.T. said he does not feel safe with his mom because she physically and emotionally harms him.

Lastly, J.C.T. described the March 6 incident. His description of the events that took place is the same as he described in the statement attached to the petition. However,

in the declaration, he asserted that he hit his head and fell to the floor after Torres pushed him into the doorframe. In his original statement, J.C.T. said that he hit his head after he pushed Torres out of his way.

J.C.T. also reported that his mother has left him home alone almost every day for years, speaks negatively about his father, threatened to put his father in jail, and blamed him for things that were not his fault. J.C.T. also claimed that Torres consistently made suicidal comments when they argued.

In her declaration, Torres refuted J.C.T.'s version of the March 6 incident and stated that she did not push or physically restrain J.C.T. Torres identified various inconsistencies in J.C.T.'s declaration and statement to the police. She stated that J.C.T. did not report to police that she physically restrained and verbally abused him, which he claimed he did in his declaration. She denied any allegations of physical abuse, verbal abuse, or making threats of suicide. Torres suggests that the DVPO petition is a retaliatory measure after this court affirmed a financial judgment against Curiel in favor of Torres.

At the conclusion of the DVPO hearing, the court stated that it found J.C.T. credible and placed significant weight on J.C.T.'s declaration in making its decision. The court primarily focused on the March 6 incident, but it also noted that J.C.T. opened up to

a pattern of abuse over the years.  The court found that a protection order was appropriate

based on a preponderance of the evidence "because of the abuse of the mother."

Rep. of Proc. at 37.  The court's order protected both Curiel and J.C.T. from Torres for

one year.

Torres filed a motion for reconsideration, arguing the trial court (1) erred by

including Curiel in the protection order without making any specific findings, (2) abused

its discretion by naming J.C.T. as a protected person when it failed to identify a specific

act, discounted contrary testimony, and ignored the defense of reasonable parental

discipline, and (3) exceeded its authority, infringing on her First Amendment rights to the

United States Constitution, by treating her social media posts as coercion even without

evidence that her son had ever seen them.  The trial court denied Torres's motion for

reconsideration.

Torres appeals.

ANALYSIS

*Standard of Review*

We review a trial court's decision to grant or deny a protection order for abuse of

discretion.  *Rodriguez v. Zavala*, 188 Wn.2d 586, 590, 398 P.3d 1071 (2017).  A trial

court abuses its discretion if its decision is manifestly unreasonable, based on untenable

grounds, or exercised for untenable reasons.  *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677,

6

684, 132 P.3d 115 (2006). The trial court's findings must be supported by substantial evidence, and those findings must support the conclusions of law. *Snyder v. Haynes*, 152 Wn. App. 774, 779, 217 P.3d 787 (2009). "Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the asserted premise. We defer to the trial court's determinations on the persuasiveness of the evidence, witness credibility, and conflicting testimony." *Id.*

*Applicable Law*

A DVPO petition "must allege the existence of domestic violence committed against the petitioner or petitioners by an intimate partner or a family or household member." RCW 7.105.100(1)(a). "Domestic violence" is defined as follows:

> (b) Physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one family or intimate partner by another intimate partner.

RCW 7.105.010(10). The petitioner may request relief on behalf of family or household members. RCW 7.105.100(1)(a).[2]

---

[2] Although Curiel raised coercive control as a basis for the DVPO in his petition and on appeal, we do not address it here because the trial court's findings and conclusions indicate the court relied on other definitions of "domestic violence."

*J.C.T.'s Protection Order*

### A. Substantial Evidence

Torres asserts that the trial court erred in finding Torres committed domestic violence against J.C.T. because (1) J.C.T. did not allege that he was physically harmed when she pushed him on March 6, and (2) J.C.T. stated in his declaration that he hit his head after he assaulted her. In other words, Torres argues that because her push did not lead to physical harm, she did not commit domestic violence.

While the trial court did not explicitly identify the specific manner in which Torres committed domestic violence under the statute, the court focused heavily on the March 6 incident when Torres pushed J.C.T. and closed the gate on his hand, and to a lesser extent, the pattern of abusive behavior described in J.C.T.'s declaration.

According to J.C.T.'s declaration describing the March 6 incident, Torres did not allow J.C.T. to leave his room so that he could finish getting ready for school. Eventually, J.C.T. tried to move past Torres so that he could get to the front door and walk to school, but Torres pushed J.C.T. into the doorframe, causing him to hit his head and fall to the floor. J.C.T. said it gave him a headache. Torres continued blocking and pushing J.C.T. away from the front door. J.C.T. left through the back door, and Torres met him at the side gate and pushed him again. J.C.T. opened the gate, but Torres slammed the gate shut on J.C.T.'s hand.

Torres's actions, as described in J.C.T.'s declaration, support the court's finding of domestic violence. Torres points to J.C.T.'s statement attached to the petition, where he states that J.C.T. hit his head after pushing Torres. While J.C.T.'s statement and declaration appear to be inconsistent as to which push caused J.C.T. to hit his head, credibility determinations are within the discretion of the trial court. J.C.T. asserted in his later declaration that his mother's push caused him to hit his head. Furthermore, aside from the March 6 incident, J.C.T. related other instances in which Torres either actually inflicted or attempted to inflict physical harm. J.C.T. alleged Torres hit him with an open hand and a metal fly swatter in October 2021 and attempted to punch him with a closed fist in November 2024. We conclude the trial court did not abuse its discretion in granting the protection order as substantial evidence supports the court's finding of physical harm.

### B. Reasonableness of Physical Discipline

Torres contends we should vacate the DVPO because the trial court failed to analyze the reasonableness of Torres's physical discipline under RCW 9A.16.100. Curiel argues we should refuse to review this issue under RAP 2.5(a) because Torres did not raise the issue to the trial court. We agree with Curiel and decline to review this issue.

Under RAP 2.5(a), we may refuse to review a claim of error not raised in the trial court. Furthermore, at the trial court level, CR 59 does not allow a party to propose new

theories of their case that could have been raised before the trial court entered an adverse decision. *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

Here, Torres concedes she did not raise the issue of whether the physical altercation alleged in J.C.T.'s declaration was a reasonable use of discipline before the trial court granted the DVPO. She argues that trial counsel likely did not raise its argument under RCW 9A.16.100 because it did not believe the conduct described by J.C.T. in his declaration could have been reasonably interpreted as domestic violence. Once the trial court made its ruling, Torres states that she promptly informed the court of this statute, which requires review on appeal. We find this argument unavailing.

Curiel filed the petition one day after the March 6 incident, and J.C.T.'s statement and subsequent declaration described Torres's actions in great detail. The notion that trial counsel found it inconceivable that the trial court would review this incident for the existence of domestic violence under these circumstances is unconvincing. This is particularly true because rather than argue J.C.T.'s allegations did not constitute domestic violence, Torres claimed that she did not "push, shove, or physically restrain J.C.T. as alleged" and indicated that she only yelled at him. It was not until her motion for reconsideration that she claimed the trial court erred by not making a finding under RCW 9A.16.100. Trial courts are not required to review arguments in a motion for reconsideration that are based on new legal theories. Torres's theory that the physical

discipline alleged by J.C.T. was reasonable as a new legal theory, and neither the trial court nor this court is obligated to consider it.

Torres also contends, when replacing chapter 26.50 RCW with chapter 7.105 RCW, the legislature intended for courts to apply the law even if the petitioner fails to do so in their brief. The only support Torres cites for this proposition is RCW 7.105.100(5). This statute prohibits courts from dismissing or denying a protection order on the basis that the petitioner alleges conduct that meets the requirements for a different type of protection order. This statute does not require trial courts to consider new arguments on appeal that were not made to the trial court. As a result, we decline to consider this argument.

*Curiel's Protection Order*

Torres contends that the trial court erred in including Curiel as a protected person under the DVPO because it failed to articulate a basis for its decision. Curiel argues that even though the trial court did not specifically articulate its grounds for including Curiel in the protection order, its oral ruling and other findings make the basis for the protection order clear. We agree with Torres that the trial court failed to articulate a basis for including Curiel in the order and remand for the trial court to enter more specific findings.

11

In all actions tried without a jury, the trial court must make specific findings of fact and separately state its conclusions of law. CR 52(a)(1). When findings are required, they must be sufficiently specific for meaningful review. *In re Det. of LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). The degree of specificity depends on the facts and circumstances of each case, but at the very least, the findings should indicate the factual bases for the trial court's conclusions. If the written findings are inadequate, they may be supplemented by the trial court's oral decision and statements on the record.

Here, the trial court granted a protection order protecting both Curiel and J.C.T. and used a mandatory form for its findings. The trial court did not indicate in the order or in its oral findings the reason it granted Curiel protection. The trial court has broad discretion to restrain the respondent from contacting members of the petitioner's household. RCW 7.105.310(1)(b). The petitioner includes "any named petitioner or any other person identified in the petition on whose behalf the petition is brought." RCW 7.105.010(29). While the trial court had discretion to include Curiel in the protection order under RCW 7.105.310(1)(b), it did not make a record of the reason for its decision. When the trial court fails to make sufficient findings, the remedy is remand. *In re Guardianship of L.C.*, 28 Wn. App. 2d 766, 776, 538 P.3d 309 (2023) (quoting *State v. P.M.P.*, 7 Wn. App. 2d 633, 645, 434 P.3d 1083 (2019)). We therefore remand the matter for the trial court to enter the relevant findings as to Curiel.

*Fees*

Curiel requests reasonable attorney fees under RAP 18.1(1). This rule permits a party to recover reasonable attorney fees if the applicable law grants the right. RCW 7.105.310(1)(j) provides courts with broad discretion to reimburse the petitioner for reasonable attorney fees when issuing a protection order. Because Torres raised a successful challenge regarding the failure of the trial court to state its reason for including Curiel in the protection order, we decline to exercise our discretion to award fees in this matter.

In her reply, Torres also requests reasonable attorney fees under RCW 4.84.185, contending that the trial court's ruling was clearly unlawful and Curiel's arguments are frivolous. We disagree. The arguments presented by the petitioner are not frivolous, and we deny Torres's requests for fees.

CONCLUSION

Substantial evidence supports the court's finding that Torres engaged in domestic violence. We therefore affirm the trial court's decision to enter a DVPO in favor of J.C.T. However, while statutory authority permitted the trial court to include Curiel in the protection order, the court failed to articulate findings supporting its decision. We therefore remand the matter for the trial court to enter the relevant findings as to Curiel.

No. 41329-2-III
*In re DVPO for Curiel*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Hill, J.

WE CONCUR:

Staab, C.J.

Murphy, J.